# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | |
|---|---|
| ALBERT J. SCOTT, | * |
| | * |
| Plaintiff, | * |
| | * |
| vs. | * |
| | *   CV 211-119 |
| CITY OF BRUNSWICK, | * |
| | * |
| | * |
| Defendant. | * |

### ORDER

Presently before the Court is Defendant City of Brunswick's ("City") Motion to Dismiss. Dkt. No. 38. For the reasons stated below, the City's motion is **GRANTED**.

### BACKGROUND

Plaintiff Albert Scott ("Scott" or "Plaintiff") was an employee of the City of Brunswick during all times relevant to this case. Scott's Complaint[1] arises from a dog fracas that occurred on January 26, 2010. On that day, Scott's fourteen-

---

[1] In actuality, Plaintiff filed a application for the appointment of an attorney, with a number of documents attached, describing the nature of Plaintiff's claims. The Clerk's office, the Court, and the parties have all treated the Plaintiff's application as a complaint, and no one involved has objected to treating it so. For the remainder of this Order, the Court will refer to Plaintiff's initial filing as his "Complaint."

year-old daughter took the family dog for a walk. During the walk, Scott's daughter was confronted by two dogs belonging to a neighbor. The neighbor's dogs began scuffling with the Scotts' dog. Scott heard the commotion while he was "working out on his home gym," and ran to the aid of his daughter and their dog. When Scott approached, the other dogs fled. Compl. 12. Scott's dog suffered minor injuries.

Scott called the police and an animal control officer was sent to Scott's address. Scott and the animal control officer, Mickey Senior, walked to the home of Anthony Albenze, the offending dogs' owner. At some point, a code enforcement officer, Leon Davis, also arrived at Albenze's home. Senior, the animal control officer, informed Albenze that the dogs should be kept contained. Scott claims Albenze became belligerent. Scott and Albenze exchanged heated words, and Scott decided it was best if he returned home. Senior remained and explained to Albenze that he needed to maintain control of his dogs.

Several minutes later, after Senior and Davis left the scene, Albenze decided to walk to Scott's home, and proceeded to write down information about Scott's vehicle. Again, the two exchanged heated words. After Albenze left, Scott called the police again. This time a police officer, Officer Franklin, was dispatched, and apparently spoke to Albenze. According to

Scott, Franklin came back to Scott's house and told him that Albenze had a bad attitude, and that Scott should consider pursuing a restraining order. Nothing more happened that day. At some point during the following days, Albenze sent a written complaint to the Brunswick Mayor and a City Commissioner. Compl. at 20.

Several days later, on February 4, 2010, Brunswick Human Resources Director, Bonnie Roberts ("Roberts") called Plaintiff about the incident. Roberts explained that she had received a written complaint about Scott. Roberts scheduled a meeting with Plaintiff for the next day regarding an employment orientation and to discuss the Albenze incident. Later that day, Plaintiff went to the Brunswick police station and asked for any police reports relating to the January 26 incident. It appears that no report was generated on January 26, so a police lieutenant on duty wrote down Scott's account of the events and documented it on a "Crime Incident Report." Compl. 27-28.

The next day, February 5, 2010, Plaintiff met with Roberts about the incident. Roberts gave Plaintiff a copy of the written complaint and Plaintiff gave Roberts the Crime Incident Report from the previous day. According to Plaintiff, Roberts then picked up the phone, called an unknown number, and asked the unknown person who answered to discontinue any investigation into the dispute between Albenze and Scott.

3

The only relevant event after the February 5, 2010 meeting appears to be that Plaintiff sent a response letter to the Brunswick Mayor. Plaintiff indicates in the Complaint that he did not receive a response from the Mayor. The remainder of the Complaint consists of a string of exhortations and criticisms regarding the shortcomings of the Brunswick sanitation division. Plaintiff discusses, in great detail, his frustration with staffing levels in the sanitation department, dissatisfaction with furloughs, and fears that the department will be privatized. Plaintiff does not connect any of these concerns to the events of January 26, 2010 or his interactions with Bonnie Roberts.

Plaintiff, proceeding *pro se*, filed this lawsuit on July 21, 2011 against the City of Brunswick, Georgia. The Complaint is forty-seven pages long and contains numerous documents. The first document is an application for the appointment of an attorney, which was denied. Dkt. No. 7. Along with the application, Plaintiff provided various documents from the Equal Employment Opportunity Commission ("EEOC") and documents submitted by Plaintiff to the EEOC. Plaintiff also included Albenze's letter to the Mayor, and his own response letter to the mayor. Plaintiff included incident reports associated with the January 26, 2010 incident, emails to the NAACP, and email strings with Roberts.

AO 72A
(Rev. 8/82)

Reduced to its core, Plaintiff's Complaint is that the City's Director of Human Resource, Bonnie Roberts, called the Brunswick Police Department and told them to stop investigating the dispute between Scott and Albenze. Plaintiff seems to contend that Roberts stopped the investigation in order to protect Albenze because Albenze is Caucasian and Plaintiff is African-American. Plaintiff seems to believe that Roberts, by asking the Police Department to discontinue any investigations, was attempting to protect Albenze from a potential civil lawsuit by Plaintiff. The City now moves to dismiss Plaintiff's suit.

## LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Here, Plaintiff is proceeding *pro se*, and *pro se* pleadings are "to be liberally construed" and held to a "less stringent standard" than those drafted by a lawyer. Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, the latitude given to *pro se* litigants does not eliminate the requirement that they conform to procedural rules. Moton v. Cowart, 631 F.3d 1337, 1340 n.2 (11th Cir. 2011).

Where a defendant challenges a complaint for failing to adequately state a claim upon which relief can be granted, the court should apply a "two-pronged approach" in analyzing the

5

complaint. See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) in resolving a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)). First, the court should "eliminate any allegations in the complaint that are merely legal conclusions." Id. This first prong excludes "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Iqbal, 556 U.S. at 678. Second, the court should assume that all well-pleaded factual allegations are true "and then determine whether [those allegations] plausibly give rise to an entitlement to relief." Am. Dental Ass'n, 605 F.3d at 1290. In determining plausibility, the court should "draw on its experience and common sense." Iqbal, 129 S.Ct. at 1950. Moreover, it is proper for the court to infer " 'obvious alternative explanation[s]' which suggest lawful conduct rather than the unlawful conduct the plaintiff[s] would ask the court to infer." Am. Dental Ass'n, 605 F.3d at 1290 (quoting Iqbal and relying on Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)). Ultimately, if the plaintiffs have not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 1289 (quoting Twombly, 550 U.S. at 570). Furthermore, "[n]o action alleging an violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely-filed EEOC charge."

AO 72A
(Rev. 8/82)

Lambert v. Ala. Dept. of Youth Servs., 150 F. App'x 990, 993 (11th Cir. 2005) (holding that district court properly dismissed plaintiff's claims given that plaintiff's claims were not contained in a timely-filed EEOC charge).

**DISCUSSION**

Plaintiff fails to state the legal basis for his claim. However, Plaintiff did initiate this lawsuit in conjunction with a request for the appointment of an attorney, pursuant to § 706(f) of the Civil Rights Act of 1964. Moreover, Plaintiff alleges that his employer engaged in conduct which harmed him, based on his race. Consequently, the Court's best estimation of Plaintiff's cause of action is that he believes that the City of Brunswick violated Title VII of the Civil Rights Act through Bonnie Robert's conduct.

The Defendant moves to dismiss Plaintiff's Complaint based on two arguments. First, Defendant argues that Plaintiff's claims are barred because he failed to timely file an EEOC complaint. Second, Defendant argues that Plaintiff has failed to plead a claim upon which relief may be granted.

**I. Failure to File a Timely EEOC Complaint**

"Before a potential plaintiff may sue for discrimination under Title VII, [he] must first exhaust [his] administrative remedies. The first step down this path is filing a timely charge of discrimination with the EEOC." Wilkerson v. Grinnell

Corp., 270 F.3d 1314, 1317 (11th Cir. 2001) (citing Crawford v. Babbitt, 186 F.3d 1322, 1326 (11th Cir. 1999) and (Alexander v. Fulton Cnty., 207 F.3d 1303, 1332 (11th Cir. 2000)). In order for the charge to be timely, a plaintiff must file an EEOC charge for intentional discrimination within 180 days of the adverse employment action. See 42 U.S.C. § 2000e-5(e)(1); Watson v. Blue Circle, Inc., 324 F.3d 1252, 1258 (11th Cir. 2003) ("Because Georgia is a non-deferral state, [plaintiff] was required to file a Charge of Discrimination within 180 days of the alleged unlawful employment action.").

In its Answer, Defendant stated as its Second Defense that the "plaintiff's complaint is barred because of the plaintiff's failure to timely file a charge with the Equal Employment Opportunity Commission." Answer 2, Dkt. No. 8. Defendant asserts again in the instant motion to dismiss that Plaintiff failed to file a timely charge with the EEOC. Mot. Dismiss. 7, Dkt. No. 38. The latest date of *any* conduct related to Plaintiff's claims is February 10, 2010. Therefore, Plaintiff would have needed to file his EEOC Charge within 180 days after the relevant conduct. Defendant argues that the documents submitted with Plaintiff's Complaint show that Plaintiff filed his EEOC charge on June 17, 2011, far outside the 180 day window. Accordingly, Defendant argues that Plaintiff's claims are barred as untimely under 42 U.S.C. § 2000e-5(e)(1).

Plaintiff responds that he actually filed an EEOC charge sometime in 2010, but that the EEOC "decided to (re)assign [Plaintiff] a second claim number in early 2011." Dkt. No. 40, at 2 (emphasis in original). In fact, Plaintiff made this same argument in his "Counter to Defense," filed in response to Defendant's Answer. Dkt. No. 9. In that Counter to Defense, Plaintiff provided documents showing that he initiated contact with the EEOC in early 2010. Those documents show that Plaintiff contacted the EEOC's Atlanta District Office in March, 2010, which then transferred his case to the Savannah Local Office. Dkt. No. 9, at 6 (dated March 1, 2010). The Savannah Local Office directed Plaintiff to complete a questionnaire. Id. at 7 (dated April 23, 2010). Upon receipt of the completed questionnaire, the Savannah Local Office informed Plaintiff that his allegations "failed to show discrimination based on [the] issues that the EEOC covers." Id. at 8 (dated June 17, 2010). That communication informed Plaintiff that although the EEOC felt that it had no authority to process Plaintiff's complaint, Plaintiff still had a right to insist on filing a charge with the EEOC - though, that charge needed to be filed within 180 days of the date of the violation. As the letter indicated, any potential charge would likely be dismissed, and then Plaintiff would be given a right to sue letter. Plaintiff's documentation

shows no further interaction with the EEOC until June 17, 2011 when he filed his actual charge.

Plaintiff seems to believe that by "touching base" with the EEOC he satisfied the exhaustion of remedies requirement set forth in 42 U.S.C. § 2000e-5(e)(1). Dkt. No. 40, at 1. Plaintiff is mistaken. Plaintiff needed to file a charge of discrimination with the EEOC within 180 days of the alleged violation. However, he did not file a charge until nearly eighteen months later. While there are some limited occasions where completing a questionnaire might be taken into account for determining the exhaustion of remedies, those cases are limited. See Francois v. Miami Dade Cnty., Port of Miami, 432 F. App'x 819, 822 (11th Cir. 2011) (holding, in part, that it was unnecessary to consider a questionnaire for the purpose of determining exhaustion of remedies where the questionnaire was not verified, the questionnaire stated that it was not considered a charge, and the plaintiff filed an actual timely charge). Plaintiff has not presented any reason why this case should fall in that limited group.

Furthermore, once a defendant asserts that a plaintiff has failed to satisfy the preconditions to a Title VII action, it is the plaintiff's burden to prove that those preconditions have been satisfied. See Jackson v. Seaboard Coast Line R. Co., 678 F.2d 992, 1010 (11th Cir. 1982); Shuford v. City of Montgomery,

AO 72A
(Rev. 8/82)

2011 WL 1375297, at *11 (M.D. Ala. Apr. 12, 2011); Goodridge v. Astrue, 2008 WL 8691093, at *2 (N.D. Ga. 2008); Lambert v. Georgia-Pacific Corp., 38 Fair Empl. Prac. Cas. (BNA) 745, at *2-3 (S.D. Ga. 1985). Here, Plaintiff has failed to demonstrate that he has met the conditions precedent to filing a Title VII action. Plaintiff has not shown that he exhausted his administrative remedies prior to filing this suit. Accordingly, Plaintiff's Title VII claims are dismissed.

**II. Failure to State a Claim for Intentional Discrimination**

Plaintiff appears to assert either a disparate treatment claim or a hostile work environment claim. Defendant argues that Plaintiff has not set forth a plausible claim for relief under either theory, even assuming all of Plaintiff's facts as true.

**A. Disparate Treatment**

"To make out a *prima facie* case of racial discrimination a plaintiff must show (1) [he] belongs to a protected class; (2) [he] was qualified to do the job; (3) [he] was subjected to adverse employment action; and (4) [his] employer treated similarly situated employees outside [his] class more favorably." Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008). Defendant argues that Plaintiff's Complaint fails completely to identify any adverse employment action.

11

The adverse employment action element requires that a plaintiff "show a serious and material change in the terms, conditions, or privileges of employment. Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1240 (11th Cir. 2001). Here, Plaintiff has not pled a single fact indicating that he was subjected to an adverse employment action. Based on Plaintiff's Complaint, and all briefing, Plaintiff is still employed with the City of Brunswick as the sanitation division director. He has pointed to no change in his terms, conditions, or privileges of employment. Plaintiff has simply not asserted any factual basis for disparate treatment claim, because none of the facts alleged even hint at an adverse employment action. Plaintiff's disparate treatment claim is dismissed.

**B. Hostile Work Environment**

In regards to Plaintiff's hostile work environment claim, Defendant argues that Plaintiff has not pled any severe or pervasive harassment, or for that matter *any* racial comments.

In order to state a plausible claim of intentional discrimination based on a hostile work environment, a plaintiff

AO 72A
(Rev. 8/82)

must demonstrate that "(1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability." Edwards v. Prime, Inc., 602 F.3d 1276, 1300 (11th Cir. 2010) (dismissing plaintiff's hostile work environment claim as speculative, where the complaint stated, without more, that plaintiff was Caucasian and harassing coworkers were Hispanic or Latino). Plaintiff claims that Roberts took steps to intervene in an investigation by the Brunswick Police Department because Plaintiff is African-American and Albenze is Caucasian. That is the full extent of Plaintiff's allegations that race was the motivating factor in this case. Plaintiff has not shown that any harassment or racially charged conduct occurred in his workplace. Plaintiff pleads no facts showing that any person exhibited any racial hostility or that any conduct could reasonably be inferred to be racially motivated. Consequently, Plaintiff's hostile work environment claim is dismissed.

**CONCLUSION**

Plaintiff has not asserted a plausible claim for relief under either a hostile work environment theory or a disparate

13

treatment theory. Plaintiff has completely failed to show that he suffered any adverse employment action or that he was subjected to severe or pervasive harassment. For those reasons, Defendant City of Brunswick's Motion to Dismiss is **GRANTED**. The Clerk is directed to close the case and **ENTER FINAL JUDGMENT** in favor of Defendant on all claims.

**SO ORDERED**, this 29th day of June, 2012.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)